·141 So. 221

## GROOVER v. WATSON.

### 6 Div. 139.

Supreme Court of Alabama.

April 14, 1932.

W. Emmett Perry, of Birmingham, for appellant.

Griffin Lamkin, of Birmingham, and George Ross, of Bessemer, for appellee.

**KNIGHT, J.**

Bill to quiet title. Complainant, appellee, avers in his bill that he owns an undivided

three-fourths interest in, and, at the time of the filing of the bill, was in the peaceable possession of, lot No. 5, in block 7, according to the map of Corey Land Company's first subdivision of Corey (as recorded in map book 9, page 15, in the probate office of Jefferson county, Ala.), situated in the city of Fairfield, Jefferson county, Ala. The respondent filed answer admitting all the averments of the bill, except that he asserted a lien upon the undivided one-fourth interest in said real property formerly owned by O. L. McCormick, and which interest in said property is now owned by the complainant, subject to the lien of the respondent. Defendant made his answer a cross-bill, and the cause was heard upon the pleadings and an agreed statement of facts. From this agreed statement of facts it appears that Florence P. McBride, J. B. Morris, O. L. McCormick, and Wilkerson Investment Company jointly owned the property, and that the complainant acquired the interest of Florence P. McBride, O. L. McCormick, and J. B. Morris, thus giving him an undivided three-fourths interest. The interest of Wilkerson Investment Company in the property is not questioned in this proceeding by any of the parties.

Florence P. McBride acquired the interest of McCormick and Morris in said property by deeds dated March 25, 1929, and these deeds were filed for record in the office of the judge of probate of Jefferson county, Bessemer division, on March 27, 1929. Thereafter, Florence P. McBride conveyed her undivided three-fourths interest in said property to the complainant, by deed dated November 23, 1929, and which deed was duly recorded in the office of the judge of probate of Jefferson county, Bessemer division.

The appellant obtained a judgment against the said O. L. McCormick on January 28, 1930, in the circuit court of Jefferson county in the sum of $335 and costs of court, and a certificate of this judgment was filed for record on the 28th day of January, 1930, in the office of the judge of probate of Jefferson county, Ala., at Birmingham, and duly recorded in Judgment Record 8, at page 203. Certificate of said judgment was never recorded in the Bessemer division of said probate office.

On the 7th day of February, 1916, the board of revenue of Jefferson county adopted a resolution establishing precinct 53 in said county, and the agreement recites that: "All acts and proceedings necessary to legally establish and create said precinct as defined in said resolution were had and done. Said precinct 53, created or established as aforesaid, for the most part embraced territory which at that time was within the territorial jurisdiction of the Bessemer Division of the circuit court of said county, but by said resolution the boundary lines of said precinct

were extended so as to embrace additional territory. The property involved in this case is situated in this additional territory."

Section 9 of the agreed statement of facts recites: "The only issue sought to be settled in this proceeding is whether, to constitute legal notice of their contents, conveyances and other papers affecting the title to the property in question should be filed and recorded in the Bessemer Division of said Probate Office, or in the Birmingham office."

On September 16, 1915, an act of the Legislature of Alabama was approved by the Governor dealing in part with the question now before the court for determination. Section 1 of this act provides: "All county officers of all counties in Alabama, which now have, or which may hereafter have a population of as much as one hundred and fifty thousand people, according to the last Federal census, or any such census, which may hereafter be taken, in which a circuit court, or court of like jurisdiction is now authorized to be held at a place other than at the county site of such counties for the trial of cases and transaction of business relating thereto, arising within a designated portion of such county, or in which such court may hereafter be authorized by law to be so held, are hereby authorized, directed and required, in addition to their respective offices at the county sites of such counties, to install, keep and maintain offices, as in this act provided, at such place other than at the county sites of such counties for the transaction of all business, executive, ministerial and judicial pertaining to such county offices and officers that arise within the territory within which the cases arising therein may be tried in the circuit court or court of like jurisdiction, held at such place other than at the county site of such counties."

Section 2 of the same act provides: "That all business pertaining to the respective county offices and officers of such counties that arises within the territory within which the cases arising therein may be tried in the circuit court or court of like jurisdiction, held at a place other than at the county site of such counties, shall be transacted at such offices by such officers at such place of holding the court, and all records made thereat shall be kept there, and not elsewhere."

By section 4 of the act it is provided: "That all papers, documents and other things pertaining to the title to property that are authorized to be filed and recorded in any office in such county are hereby authorized and required to be filed and recorded in such offices of such officers at such place other than at the county site, as in this act provided for, if the property, affected thereby, or sought to be affected thereby is located within, or partly within the territory within which the cases arising therein may be tried

in the circuit court or court of like jurisdiction at such place; provided, however, if such property is located partly within such territory, and partly within the remaining territory of such county, then such instrument, document or paper must be filed and recorded both in the office at the county site, and in such office at such place other than the county site as herein provided for. * * *" Gen. Acts 1915, pp. 549, 550.

It is conceded that the property involved in this suit was not included within the territorial jurisdiction of the Bessemer branch of the circuit court at the time of the passage of the act above quoted. However, it is admitted that the board of revenue of Jefferson county, by legal proceedings and in an adequate way, created or established precinct 53 (which precinct included the property involved in this suit) on February 7, 1916.

On August 18, 1919, the Legislature of Alabama passed a further act (Local Acts 1919, pp. 62, 63), section 2 of which reads: "The said Circuit Court of the Tenth Judicial Circuit, holding at Bessemer, as in this Act provided, shall have, exercise and possess all of the jurisdiction and the powers which are now or which may hereafter be conferred by law on the several Circuit Courts of this State, which said jurisdiction and powers shall be exclusive in, limited to, and extend over that portion of the territory of the County of Jefferson which is included in the following precincts, to-wit: Williams precinct No. 1, Jonesboro precinct No. 2, Parsons precinct No. 3, Aarons precinct No. 4, Short Creek precinct No. 5, Bethlehem precinct No. 7, Meeks precinct No. 24, Toadvine precinct No. 27, Bessemer precinct No. 33, Gwins precinct No. 35. Huey's precinct No. 40, Parkwood precinct No. 41, Mulga precinct No. 49, Virginia Mines precinct No. 51, Fairfield precinct No. 53, and Brighton precinct No. 55, as said precincts are at present constituted, and from and over the above mentioned and described territory all jurisdiction and powers heretofore or now exercised or existing therein by the Circuit Court of the Tenth Judicial Circuit, as now held at Birmingham, is hereby expressly excluded."

Thus it is made to appear that precinct 53, as established by resolution of the board of revenue, February 7, 1916, came within the territorial jurisdiction of the Bessemer division of the circuit court of Jefferson county; and, falling within the territorial jurisdiction of that division of the court, this added territory at once became subject to the provisions of the first above-quoted act of the Legislature, sections 1, 2, and 4 of which have been heretofore set out in this opinion, and it is unnecessary to repeat the same at this point.

At the time of the execution of the conveyances to Florence P. McBride, and of the execution by her of the conveyance to the complainant, precinct 53 was within the Bessemer division of the circuit court, and under the act last quoted, and to comply therewith, these conveyances were due to be recorded in the Bessemer division of the probate court of Jefferson county, and not at Birmingham, Ala. Board of Revenue v. Huey, 195 Ala. 83, 70 So. 744. The recordation of the conveyance in the office of the judge of probate at Birmingham would have been ineffectual for the purpose of constructive notice of their execution. The deeds were properly recorded in the Bessemer division of the probate office of Jefferson county, and, upon being filed in that office, gave constructive notice to the world of their execution. It must be held, therefore, that, when the appellant Carl Groover secured his judgment against McCormick, he had constructive notice of the fact that McCormick had conveyed his interest in the lot to Florence P. McBride, and that she had conveyed the same to appellee.

It follows, therefore, that, under the agreed statement of facts, the court below correctly interpreted the law as applicable to the case, and the decree is here affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.